UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTHONY MONTE,

          Plaintiff,

                                Case No.: 8:23-cv-855-JLB-SPF

v.

CITY OF TAMPA,

          Defendant.

_____/

## ORDER

      Plaintiff Anthony Monte filed suit against his employer, the City of Tampa,

alleging federal and state law claims of disability discrimination in violation of the

Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA") and the

Florida Civil Rights Act of 1992 (the "FCRA"), respectively.  Plaintiff also alleges a

claim of discrimination for the purpose of interfering with the attainment of benefits

under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et*

*seq.* ("ERISA").  Before the Court is Defendant's motion to dismiss the amended

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 13).

Defendant contends that Plaintiff is not a "qualified employee" under the ADA and

the FCRA, that Plaintiff failed to plead exhaustion of administrative remedies as

required by ERISA, that Plaintiff's ERISA claim would preempt his FCRA claim,

and that ERISA does not expressly prohibit refusals to offer overtime to employees

in consideration of the employee's potential economic cost and benefit to the

1

employer.  (*Id.* at 5–13).  For the following reasons, Defendant's Motion to Dismiss is **DENIED**.  The denial is without prejudice to the extent set forth below.

## FACTUAL BACKGROUND[1]

Plaintiff Anthony Monte worked as a police officer for the City of Tampa from 2009 until 2022.  (Doc. 12 at ¶ 13).  In 2019, Plaintiff became a "Master Patrolman." (*Id.* at ¶ 14).  He was a member of a motorcycle patrol squad.  (*Id.*)  On February 27, 2020, Plaintiff was severely injured in a motor vehicle accident that happened while he was on the job while attempting to intercept a possible stolen vehicle while in his motor vehicle.  (*Id.* at ¶ 15).  The collision caused permanent injury to his lumbar spine.  (*Id.*)

On March 4, 2020, Plaintiff returned to work and worked until some time in April when he became "temporarily incapacitated due to the injury."  (*Id.* at ¶ 16). He sought treatment and returned to "light duty" in June 2020.  (*Id.* at ¶ 17).  In August 2020, while performing rehabilitation exercises under the instruction of a physical therapist, Plaintiff suffered a reinjury to his lumbar spine.  (*Id.* at ¶ 18). The reinjury caused a loss of sensation in his right leg and a loss of mobility due to foot drop resulting from a nerve impingement.  (*Id.*)  On December 9, 2020, Plaintiff underwent surgery to repair the injury to his lumbar spine.  (*Id.* at ¶ 19).

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted).  Accordingly, this background section relies on the facts recited in the Amended Complaint.  (*See* Doc. 12).

On May 1, 2021, Plaintiff returned to work but due to his injury, was moved to a "light duty" assignment and thereafter applied for medical retirement as a result of his condition.  (*Id.* at ¶ 20).  Following his return to the light-duty assignment, and while his request for a medical retirement was pending, Plaintiff asked his supervisor, Sergeant James Reiser, for permission to work a motorcycle safety course as an assisting officer, which he had done in the past.  (*Id.* at ¶ 22).  Plaintiff explains that although some of the officer-instructors rode motorcycles to demonstrate techniques during the motorcycle safety course, others worked the class on foot and instructed participants without physically getting on a motorcycle.  (*Id.*)  Plaintiff alleges that he "was more than capable of assisting participants in the course by providing one-on-one instruction despite his disability."  (*Id.*)  Sergeant Reiser denied Plaintiff's request to work the motorcycle safety course and told him that "it wouldn't look good for him to work overtime given that he had applied for Medical Retirement."  (*Id.* at ¶ 23).

On May 27, 2021, Plaintiff's physician determined that he had reached "maximum medical improvement" from his injury and would be disabled and limited to not lifting any items over 50 lbs.  (*Id.* at ¶ 24).  Following the doctor's determination, Plaintiff again asked Sergeant Reiser if he could work overtime.  (*Id.* at ¶ 25).  The Amended Complaint indicates that his only limitation was against lifting something over 50 lbs.  (*Id.*)  Sergeant Reiser again denied Plaintiff's request, citing Plaintiff's back injury.  (*Id.*)  Plaintiff spoke with Lieutenant Alex Theil, who said he did not have a problem with him working overtime but indicated he would

3

need permission from Sergeant Reiser.  (*Id.* at ¶ 26).  After Plaintiff conveyed to Sergeant Reiser that Lieutenant Thiel did not have a problem with him being assigned to work the motorcycle safety course, Sergeant Reiser conferred with Liutenant Theil.  (*Id.* at ¶ 27).  Lieutenant Thiel then contacted Plaintiff and "informed him that he would not be permitted to work any overtime because of his back injury and application for Medical Retirement."  (*Id.* at ¶ 27).  In July 2021, Plaintiff again asked if he could work overtime for jobs that were within his physical work restrictions and Sergeant Reiser again denied his request.  (*Id.* at ¶ 28).

On August 26, 2021, Corporal Matt Belmonte asked Plaintiff if he could assist with a photo pack.  (*Id.* at ¶ 29).  While Plaintiff does not explain what that assignment would entail, he alleges that he "could have easily performed this task within his doctor's restrictions," but it would have required that he worked overtime.  (*Id.*)  Plaintiff asked Sergeant Reiser if he could work overtime to help with this task, but Sergeant Reiser denied the request "under the general bar from working overtime because of his disability."  (*Id.*)

On June 22, 2022, the City of Tampa approved Plaintiff's application for Discharge due to Medical Disability.  (*Id.* at ¶ 30).  Plaintiff explains that the formula to calculate his retirement pension included the amount of overtime wages he earned in his final year of work as a police officer.  (*Id.* at ¶ 31).  Plaintiff's overtime component was calculated at zero.  (*Id.*)  Plaintiff calculates that if he had been permitted to work overtime during his last year, he would have earned

$17,640 that year and it would have resulted in an $11,466 increase to his annual pension benefit.  (*Id.*)

## PROCEDURAL BACKGROUND

On April 19, 2023, Plaintiff filed a complaint against Defendant.  (Doc. 1). Defendant filed a motion to dismiss on May 22, 2023.  (Doc. 11).  Then, on June 9, 2023, Plaintiff filed an amended complaint, which is the operative complaint before this Court.  (Doc. 12).  Defendant filed a motion to dismiss the amended complaint. (Doc. 13).  Plaintiff filed a response.  (Doc. 14).

## DISCUSSION

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Bryant*, 187 F.3d at 1273 n.1 (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)).  This standard does not require detailed factual allegations but demands more than an unadorned accusation.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) (citation omitted).

To warrant dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6), it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Blackston v. State of Alabama*, 30 F.3d 117, 120 (11th Cir. 1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73

(1984)).  Said differently, "[a] complaint may not be dismissed pursuant to Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

## I.   Whether the Amended Complaint adequately alleges that Plaintiff is a "qualified person" under the ADA and the FCRA.

Counts I and II of the Amended Complaint sound in discrimination based on disability in violation of the ADA and the FCRA, respectively.  (Doc. 12 at 8–13).[2] The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  "To establish a *prima facie* case of employment discrimination under the ADA, a plaintiff must show that, at the time of the adverse employment action, he had a disability, he was a qualified individual, and he was subjected to unlawful discrimination because of his disability."  *Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014).  Disability discrimination actions under the FCRA

---

[2] In a section titled, "ADMINISTRATIVE PREQUISITES," the Amended Complaint states that Plaintiff "has satisfied all pre-suit requirements necessary for filing this action."  (Doc. 12 at ¶ 10).  It further states that Plaintiff received a "Notice of Suit Rights granting him permission to file suit in this matter."  (*Id.* at ¶ 11).  It is unclear which administrative body issued this Notice to Plaintiff.  In all events, the Court accepts the allegation that all administrative prerequisites for suit under the ADA and FCRA have been satisfied.  Should Defendant desire to file a supplemental motion to dismiss as to whether any exhaustion requirement(s) have/ has been satisfied as to these federal and state claims, Defendant may seek leave to do so.

are analyzed under the same framework as the ADA. *Id.* at 1266. The Court will therefore address the ADA and FCRA claims together.

In its motion to dismiss, the City of Tampa only contests one element of the *prima facie* case: whether Plaintiff sufficiently alleges that he was a qualified individual. (Doc. 13 at 5–9). A "qualified individual" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Mazzeo*, 746 F.3d at 1267–68; 42 U.S.C. § 12111(8). Consideration is "given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). "A reasonable accommodation" is one that "enables the employee to perform the essential functions of the job." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001) (citing *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998)).

Plaintiff contends that he was a qualified individual because the City "effectively creat[ed] a new position of light duty officer" when Plaintiff became permanently injured with no possibility of recovery. (Doc. 14 at 6). The Amended Complaint states that "[i]n Monte's final year employment with the City, he worked permanently as a Police officer with light duty restrictions until his medical retirement could be approved," and that Plaintiff was "qualified for the essential

terms of the position he held in his final year as a Police Officer working with light duty restrictions."  (Doc. 12 at ¶¶ 42–43).

Defendant was not required to accommodate Plaintiff by creating a position for him.  *See* 29 C.F.R. § 1630.2(o).  But the Amended Complaint alleges that Defendant *did* create this light duty position for Plaintiff.  And the Court is unconvinced by Defendant's argument that the Court should look to what the Amended Complaint alleges was Plaintiff's previous position as a police officer without light duty restrictions to determine whether Plaintiff was a "qualified individual" under the ADA during the motion to dismiss stage.  *See Haysman v. Food Lion, Inc.*, 893 F. Supp. 1092 (S.D. Ga. 1995) ("Whatever Food Lion's motivation, they did create this light duty position for [plaintiff], and until Food Lion terminated this temporary position, [plaintiff] was entitled to the same rights under the ADA as any other covered employee") (citation omitted); *cf. Taylor v. Garrett*, 820 F. Supp. 933, 939 (E.D. Pa. 1993) ("If one were to accept the Navy's rigid definition of the 'position in question,' an employer who chose to reassign to light-duty work an employee who had become unable to perform his original job would have an unsettling 'carte blanche' power over that employee.  During the course of the handicapped worker's light-duty employment, the employer would be able, without any sanction under the Rehabilitation Act, to harass that worker because of his handicap, fail reasonably to accommodate that worker's disability, or otherwise engage in handicap-based discrimination simply because the employee was not 'qualified' for a position that had nothing to do with his current work.").

Instead, the Court accepts the allegations in the Amended Complaint as true and assumes that Plaintiff was qualified for the light duty position. (Doc. 12 at ¶ 43).

Whether the light duty position was temporary or permanent may become important at the summary judgment stage. *See Malabarba v. Chicago Tr. Co.*, 149 F.3d 690, 697 (7th Cir. 1998) (distinguishing *Taylor* because the plaintiff in that case was assigned to a permanent light-duty assignment, as opposed to a temporary light-duty assignment); *see also Patterson v. City of Melbourne*, Case No. 6:21-cv-754-CEM-LHP, 2023 WL 5435538, at *17 (M.D. Fla. Apr. 18, 2023) (in summary judgment context, where plaintiff was notified that there was no need for his light duty placement on a permanent basis, court found that "the need to remain on light duty, per se, meant that [p]laintiff could not perform the essential functions of his job"). But, at this stage of the litigation, the Court is bound to accept as true Plaintiff's well-pleaded allegation that his light-duty position was permanent. (Doc. 12 at ¶ 42). To be clear, the Court is not ruling on the merits whether Plaintiff is a qualified individual under the ADA and the FCRA or whether his light duty assignment was temporary until Plaintiff, if ever, could return to his previous *unrestricted* duties as a police officer. The Court's decision on this matter is limited to its determination that the Amended Complaint adequately alleges that Plaintiff is a qualified individual under the ADA and the FCRA.

## II.    Whether the Amended Complaint fails to state a claim for relief under ERISA.

Count III of the Amended Complaint sounds in discrimination for the purpose of interfering with the attainment of benefits under ERISA. (Doc. 12 at

9

13–15).  Defendant claims that the Amended Complaint fails to state a cause of action under ERISA because (1) refusal to offer overtime work and pay is not actionable under ERISA, and (2) Plaintiff does not allege that he had a statutory or contractual right to overtime.  (Doc. 13 at 12–14).

Under section 510 of ERISA, "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan."  29 U.S.C. § 1140.  To prevail on an ERISA interference claim, a plaintiff "must introduce evidence suggesting that the employer's decision was directed at ERISA rights in particular."  *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1224 (11th Cir. 1993) (citing *Unida v. Levi Strauss & Co.*, 986 F.2d 970, 979 (5th Cir. 1993); *Conkright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 239 (4th Cir. 1991)).  "The ultimate inquiry in a § 510 case is whether the employer had the specific intent to interfere with the employee's ERISA rights."  *Id.* (citing *Seaman v. Arvida Realty Sales*, 985 F.3d at 546; *Owens v. Storehouse, Inc.*, 984 F.2d 394, 397 (11th Cir. 1993)).

Here, Plaintiff would have to show more than the incidental loss of benefits as a result of a discharge either via direct proof of discrimination or circumstantial evidence.  *Id.* (citations omitted).  The Amended Complaint alleges that Plaintiff's request for overtime was denied for the explicit reason that "it wouldn't look good for him to work overtime given that he had applied for Medical Retirement," and that Plaintiff was thus subjected to a reduction in the future value of his annual

pension benefit.  (Doc. 12 at ¶¶ 21–23).  The Amended Complaint specifically alleges that Sergeant Reiser rejected the overtime requests to "intentionally reduce Officer Monte's retirement pension benefit" (Doc. 12 at ¶ 69) and that "Defendant intentionally prohibited [Mr.] Monte from working overtime in his final year to reduce the value of his retirement pension" (Doc. 12 at 14).  Accepting these allegations as true, as the Court must at this stage, it is plausible that Plaintiff could show that he was entitled to ERISA protection and that the City of Tampa denied him overtime with the intent to interfere with his protected benefits.

With a single citation to a non-binding opinion, Defendant contends that because ERISA does not expressly prohibit an employer's refusal to offer overtime to an employee to stave off a higher pension value, Plaintiff's ERISA claim must fail.  (Doc. 13 at 12) (citing *Shawley v. Bethlehem Steel Corp.*, 784 F. Supp. 1200, 1203 (W.D. Pa. 1992)).  At this early stage of litigation and with the limited briefing on this issue before the Court, the Court is simply not convinced by Defendant's argument that Plaintiff has failed to state a cause of action under ERISA because refusal of overtime with the intent to adversely impact the amount of an employee's pension benefit is not prohibited under section 510.  In fairness, Plaintiff also failed to cite any case law supporting his claim.  (Doc. 14 at 10–12).  Accordingly, should Defendant wish to reassert this argument at the summary judgment stage, it may do so.

Defendant next argues that Plaintiff does not allege that he had a statutory or contractual right to overtime and thus it would be "paradoxical to find that [his]

pension plan gave him more rights than the collective bargaining agreement . . . under which he was formerly employed." (Doc. 13 at 13). Defendant cites *Rhee v. Witco Corporation*, 762 F. Supp. 211 (N.D. Ill. 1991) in support of this argument. (Doc. 13 at 13). But Defendant neither explains why it believes that Plaintiff is claiming that he had a specific right to overtime, nor explains why such a claim would be paradoxical. In *Rhee*, the only case cited by Defendant in support of this argument, the plaintiff did not allege that he was a beneficiary of an ERISA plan. *Rhee*, 762 F. Supp. at 213. The *Rhee* court determined that the plaintiff was not a participant because he did not expect to return to covered employment or have a colorable claim to vested benefits. *Id. Rhee* is inapposite because here, Plaintiff alleges that he was a beneficiary under an ERISA plan (Doc. 12 at ¶ 68) and Defendant does not appear to argue otherwise. Thus, the Court rejects this argument. Moreover, the Court disagrees with Defendant's characterization of Plaintiff's ERISA claim as "an accounting of what he perceives to be the value (damages) of his discrimination claim. (Doc. 13 at 13). The Amended Complaint asserts that "Defendant intentionally prohibited [Mr.] Monte from working overtime in his final year to reduce the value of his retirement pension." (Doc. 12 at 14). Accordingly, the Court rejects this argument as well.

### III.   Whether the Amended Complaint pleads exhaustion of administrative remedies.

The Eleventh Circuit requires employees to exhaust administrative procedures before filing suit for benefits under ERISA. *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160 (11th Cir. 1992); *see also Lanfear v. Home Depot, Inc.*, 536 F.3d

1217, 1223 (11th Cir. 2008) ("The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court") (citation omitted).  "The administrative exhaustion requirement is not found in the ERISA statute itself.  Instead, it is a court-imposed, policy-based requirement."  *Watts v. BellSouth Telecomm, Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003).

Defendant states that "[P]laintiff fails to allege that he pursued any administrative remedies provided by the pension plan or to plead an exception thereto."  (Doc. 13 at 10).  The Amended Complaint states that "Plaintiff did not see any avenue for pursuing an administrative remedy to address the City's interference with his accrual of future benefits under the plan."  (Doc. 12 at ¶ 12).

"An implicit assumption to the exhaustion of administrative remedies requirements is that such remedies are available.  Where no such procedure exists it is implausible that such a procedure must be exhausted."  *Leonard v. Ben Hogan Co.*, No. 92-48-CIV-FTM-17D, 1992 WL 436351, at *3 (M.D. Fla. July 1, 1992).  Defendant has not alleged what procedures Plaintiff has failed to exhaust before bringing this suit.  The pension contract (attached to the Amended Complaint) does not appear to provide for administrative review of a beneficiary's pension's value.  (*See* Doc. 12-1).  Accordingly, the Court declines to dismiss the Amended Complaint based on failure to exhaust administrative remedies.  To the extent that Defendant is aware of some administrative remedy that Plaintiff has failed to exhaust for his

ERISA claim, Defendant may request leave to file a supplemental motion to dismiss based on that ground.

## IV.    Whether Plaintiff's ERISA claim preempts his FCRA claim.

Defendant argues that ERISA preempts the claim of disability discrimination in violation of the FCRA (Count II).  (Doc. 13 at 12).  Defendant devotes just over a half-page to this complex and nuanced issue.  (Doc. 13 at 11–12).  Defendant claims that all three counts in the Amended Complaint "revolve around the same core set of facts" and, because ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" subject to ERISA, Plaintiff's FCRA claim is preempted.  (*Id.*)

The ERISA statute provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" subject to ERISA.  29 U.S.C. § 1144(a).  Because Defendant's argument mirrors this part of the statute, the Court assumes that Defendant is *exclusively* arguing that what is sometimes referred to as the "express preemption" provision applies.  *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46 (1987).  This provision is "deliberatively expansive."  *Id.*  "[S]tate law claims 'relate to' an ERISA plan for preemption purposes 'whenever the alleged conduct at issue is intertwined with the refusal to pay benefits.'"  *Hall v. Blue Cross / Blue Shield*, 134 F.3d 1063, 1065 (11th Cir. 1998) (quoting *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997)).  "State law claims that 'have a connection with [an] ERISA plan' are thus preempted."  *Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1351 (11th Cir.

14

1998) (quoting *Morstein v. Nat'l Ins. Serv. Inc.*, 93 F.3d 715, 722 (11th Cir. 1996) (en banc)).  Thus, "[w]here an employee alleges that a principal reason for his discharge is his employer's desire to avoid paying benefits due under an ERISA plan, that claim necessarily 'relates' to the plan and is expressly preempted by ERISA, even where it states distinct state tort or contract theories and seeks compensatory or punitive damages not available under ERISA."  *Gonzalez v. Wells Fargo Bank, N.A.*, No. 12-80937-CIV, 2013 WL 5435789, at \*9 (S.D. Fla. Sept. 27, 2013) (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990)).

In *Morton v. Nexagen Networks, Inc.*, Case No. 8:18-cv-386-T-24 MAP, 2018 WL 1899038 (M.D. Fla. Apr. 20, 2018), the court considered an issue akin to the situation here.  In *Morton*, a defendant argued that plaintiff's age discrimination claim related to an ERISA plan because plaintiff had alleged a benefit-defeating motive for his termination.  *Id.* at \*4.  There, similar to this case, plaintiff had alleged a "mixed motive for his termination," namely a benefits-defeating motive and an age discrimination motive.  *Id.*  The *Morton* plaintiff argued that his age discrimination claim under the FCRA was patterned after the Age Discrimination in Employment Act, and thus his age discrimination claim was excluded from preemption under ERISA section 514 (d).  *Id.*  ERISA section 514(d) provides that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law."  29 U.S.C. § 1144(d),

15

The *Morton* court accepted plaintiff's argument. *See Morton*, 2018 WL 1899038, at *5; *see also Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 108 (1983) (holding that New York law was not preempted with respect to ERISA benefit plan insofar as it prohibited practices that were unlawful under federal law); *Devlin v. Transp. Commc'ns Intern. Union*, 173 F.3d 94, 100–01 (2d Cir. 1999) ("[T]he New York Human Rights Law is saved from preemption in this case precisely to the extent that its protections track those of the ADEA."); *Colonial Life & Acc. Ins. Co. v. Medley*, 572 F.3d 22, 27 (1st Cir. 2009) ("[B]ecause the ADA contemplates that state laws will contribute to the overall federal enforcement regime, . . . state statutory claims targeting conduct unlawful under the ADA would be exempt from ERISA preemption as well.").

Accepting the facts pleaded in the Amended Complaint as true, because Plaintiff's FCRA claims of discrimination claim track those of federal laws, such as the ADA, the Court holds that the FCRA claims are not preempted by ERISA. *See* 29 U.S.C. § 1144(d)*; Morton*, 2018 WL 1899038, at **5–6, *Devlin*, 173 F.3d at 100–01; *Colonial Life & Acc. Ins. Co.*, 572 F.3d at 27.  This Court thus finds that the FCRA claims are saved from *express* preemption due to the exception set forth in section 514(d), 29 U.S.C. § 1144(d).

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss (Doc. 13) is **DENIED without prejudice**. Defendant may seek leave to file a limited supplemental motion to dismiss addressing any exhaustion requirements Plaintiff has not met.

**ORDERED** in Tampa, Florida on February 6, 2024.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

17